UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| BRIAN CLAY COOK, | Case No. 3:19-cv-00081-MMD-CLB |
|---|---|
| Petitioner, | ORDER |
| v. | |
| RENEE BAKER, *et al.*, | |
| Respondents. | |

**I.   SUMMARY**

This is a habeas corpus action under 28 U.S.C. § 2254 filed by Brian Cook. The third amended petition is the operative petition. (ECF No. 49.) Currently before the Court are Respondents' motion to dismiss and Cook's opposition. (ECF Nos. 64, 81.) Respondents filed a reply, but it was for a different action. (ECF No. 90.) The Court will strike the reply to avoid confusion in the future. This action was untimely commenced, but the Court finds that equitable tolling is warranted. The Court disagrees with most of Respondents' other arguments, deferring a determination of prejudice to excuse the procedural default of ground 7 until the Court reaches the merits of the petition. The Court thus denies the motion to dismiss in part.

**II.   BACKGROUND**

On January 14, 2014, after a jury trial, Cook was convicted of three counts of sexual assault with a minor under the age of 14, two counts of sexual assault with a minor under the age of 16, two counts of sexual assault, and one count of battery with intent to commit sexual assault. (ECF No. 71-3.) Cook appealed. The Nevada Supreme Court affirmed on October 14, 2016. (ECF No. 73-13.) Cook filed a petition for rehearing, and the Nevada Supreme Court denied it. (ECF Nos. 73-14, 73-15.) Cook filed a petition for

reconsideration en banc, and the Nevada Supreme Court denied it on February 24, 2017. (ECF Nos. 73-16, 73-17.) Remittitur issued on March 21, 2017. (ECF No. 73-18.)

On April 3, 2017, Cook filed a proper-person motion for order of delivery of records. (ECF No. 73-20.) He asked the state district court to order trial counsel to give his case file to him. (*Id.*) Cook wrote in an affidavit at the end:

> Mike Felliciano [one of Cook's public-defender attorneys] ignores my letters and refuses to answer any attempts to contact him at all, much like he did in my trial where I was falsely accused, pathetically tried and wrongfully convicted and illegally incarcerated due to his [incompetence] and complete [disregard] for actual justice or truth, human dignity. Mr. Felliciano is ignoring me.

(ECF No. 73-20 at 5.) Cook was not present at the hearing on this motion on April 24, 2017. There, Amy Coffee, Cook's other public-defender attorney, asked the court to appoint counsel for Cook to file motions with the aid of an attorney. She noted that Cook had had multiple health issues, but that she did not know the current state of his health. The prosecutor asked to be allowed to respond to that motion for appointment of counsel. The state district court noted the prosecutor's request and appointed post-conviction counsel before Cook had filed a post-conviction habeas corpus petition. (ECF No. 65-1 at 38 (court minutes).) This is where the problem started.

On May 10, 2017, Karen Connolly confirmed that she would represent Cook, and the court set a status check for June 21, 2017. (ECF No. 65-1 at 41 (court minutes).) On June 21, 2017, Connolly stated that she had received the file, and she requested a 6-month deadline to file the writ. The state district court set December 20, 2017, as the due date to file a *supplement to the petition*. (ECF No. 65-1 at 42.)

Two provisions of Nevada law are relevant to this problem. First, if a person convicted in a Nevada Court has appealed the judgment of conviction and wishes to file a post-conviction habeas corpus petition, then that petition is due no later than one year after the Nevada Supreme Court issues its remittitur from the direct appeal. *See* NRS § 34.726(1). Second, if, after reviewing an indigent proper-person petition the state district court determines that representation by counsel is necessary, then the state district court

may appoint counsel, who then may file a supplement to the petition. *See* NRS § 34.750(1), (3).

The state district court skipped over an important step. Cook had not filed a post-conviction petition before the state district court appointed Connolly and set a due date for a supplement to the petition. However, the due date of December 21, 2017, was well within Nevada's one-year period to file a petition.

On December 21, 2017, Connolly (on Cook's behalf) filed a Motion Requesting Additional Time to File the *Supplement to the Petition* for Writ of Habeas Corpus. (ECF No. 73-23 (emphasis added).) Connolly stated that she "needs additional time to complete the investigation and to prepare the *supplement to the petition*." (*Id.* at 3 (emphasis added).) Part of the text following that statement is missing; this is a problem with the original document, not the filing of the exhibit, because the internal pagination is consistent. From what is available, a deputy district attorney identified only as "he" did not object to the additional time and initially was willing to sign a stipulation. This deputy district attorney might have been Steven Owens, because the other deputy district attorney involved with the case was a woman. Later, Owens told Connolly that she would need to file a motion instead. (*Id.* at 4.) On January 3, 2018, the state district court granted the motion, with a briefing schedule to be set later. (ECF No. 65-1 at 43 (court minutes).) On March 21, 2018, Nevada's one-year period to file a post-conviction habeas corpus petition expired. *See* NRS § 34.726(1). On May 25, 2018, the federal one-year period to file a habeas corpus petition expired, as the Court will discuss below. *See* 28 U.S.C. § 2244(d)(1)(A). On June 4, 2018, an attorney standing in for Connolly stated that the parties had agreed on September 7, 2018, as the due date for filing the *petition*. (ECF No. 65-1 at 45 (court minutes).) Both the date of the hearing and the due date for filing the state petition were after the expiration of both the state and the federal one-year periods of limitation.

On September 11, 2018, Cook filed a post-conviction habeas corpus petition in the criminal action. (ECF No. 73-24.) In the procedural history part of the petition, Cook stated,

3

"Due to issues getting the file, unfamiliarity with the case, and investigation, Cook requested additional time to file the writ. The State did not oppose those requests. An extension was granted until September 7, 2018." (*Id.* at 3-4). Cook later filed a supplement to the petition, but that only explained that he had initially filed the petition in the wrong action. (ECF No. 73-28.)[1]

Chief Deputy District Attorney Steven Owens authored the response to the petition. In relevant part, respondents argued that the petition was time-barred under NRS § 34.726(1) because Cook filed the petition almost six months after the one-year period had expired on March 21, 2018. (ECF No. 73-29 at 5-6.) Respondents also argued that Cook had not shown good cause and prejudice to overcome the time bar. (ECF No. 73-29 at 6-14.) Cook replied that respondents were not arguing in good faith because they had agreed to the initial request to extend the due date for the petition and then agreed upon the due date. (ECF No. 73-30 at 3.)

The state district court held a hearing over two days. (ECF Nos. 74-1, 74-2.) At the end of the hearing on January 9, 2019, the state district court denied the petition as untimely. (ECF No. 74-2 at 25-28.)

Connolly wrote to Cook the same day, telling him that she should have ensured that the petition was timely filed even though she was granted extensions to file it, that she would file a protective petition in this Court, and that Cook would need new counsel to represent him on appeal because her late filing of the petition created a conflict of interest. (ECF No. 82-7.) On January 28, 2019, Cook appealed the state district court's denial of the post-conviction petition. (ECF No. 74-7.)

In this Court, Cook signed and dated his § 2254 petition on February 4, 2019, and the Court received it on February 8, 2019. (ECF No. 6.) On February 25, 2019, the Court appointed the Federal Public Defender to represent Cook. (ECF No. 5.) Cook filed a

---

[1]The former practice of the state district court was to file a post-conviction habeas corpus petition in the underlying criminal action. That changed around the time Cook filed his petition. The new practice is to file a petition in separate but related civil action.

4

counseled first amended petition on March 21, 2019. (ECF No. 14 (sealed); ECF No. 31 (publicly available redacted copy).) On March 5, 2020, Cook filed a second amended petition and sought leave to stay the action while his post-conviction appeal was pending in the Nevada Supreme Court. (ECF No. 38, 39.) The Court stayed the action on April 6, 2020. (ECF No. 45.) On July 16, 2020, the Nevada Supreme Court affirmed the state district court's denial of the state post-conviction petition, and on August 11, 2020, the Nevada Supreme Court issued its remittitur. (ECF Nos. 75-4, 75-5).

This Court reopened the action on October 9, 2020. (ECF No. 48.) Cook filed his third amended petition on January 7, 2021. (ECF No. 49.) Respondents' motion to dismiss followed on July 12, 2021. (ECF No. 64.)

## III. LEGAL STANDARD

### A. Statute of limitations

Cook had one year from the date his judgment of conviction became final to file a habeas corpus petition under § 2254. *See* 28 U.S.C. § 2244(d)(1)(A). The judgment became final when the time to file a petition for a writ of certiorari in the Supreme Court of the United States expired. *See Jimenez v. Quarterman*, 555 U.S. 113, 119-20 (2009).

A properly filed state post-conviction habeas corpus petition will toll the one-year period. *See* 28 U.S.C. § 2244(d)(2). However, an untimely state petition is not properly filed, and thus does not toll the one-year period. *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). Additionally, if the federal one-year period expires before a state petition is filed, then the state petition cannot revive the federal one-year period, properly filed or not. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003). The petitioner effectively files a federal petition when he delivers it to prison officials to be forwarded to the clerk of the court. *See* Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts.

The federal one-year period is subject to equitable tolling. *See Holland v. Florida*, 560 U.S 631, 645 (2010). "A petitioner seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that

5

some extraordinary circumstance stood in his way and prevented timely filing." *Smith v. Davis*, 953 F.3d 582, 588 (9th Cir. 2020) (en banc), *cert. denied*, 141 S. Ct. 878 (2020) (citations and quotations omitted).

### B. Exhaustion of state-court remedies

Before a federal court may consider a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court. *See* 28 U.S.C. § 2254(b). To exhaust a ground for relief, the petitioner must fairly present that ground to the state's highest court, describing the operative facts and legal theory, and give that court the opportunity to address and resolve the ground. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

### C. Procedural default

A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state-law ground that is independent of the federal question and adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id*. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986). To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *See Carrier*, 477 U.S. at 488. To show prejudice, "[t]he habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Carrier*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original).

///

**IV. DISCUSSION**

    **A.    The action is untimely, but equitable tolling is warranted**

Cook's direct appeal ended when the Nevada Supreme Court denied reconsideration en banc on February 24, 2017. (ECF No. 73-17.) The time to file a petition for certiorari expired 90 days later, and Cook's judgment of conviction became final, on May 25, 2017. *See* Sup. Ct. R. 13(1).

Cook's state post-conviction petition did not toll the one-year period under § 2254(d)(2) for two reasons. First, the petition was untimely, and thus not properly filed within the meaning of § 2254(d)(2). *See Pace*, 544 U.S. at 417. Second, Cook had no state post-conviction petition pending in the year after his judgment of conviction became final, and the federal one-year period expired at the end of May 25, 2018. By the time Cook filed his state post-conviction petition in September 2018, no time remained to be tolled. *See Ferguson*, 321 F.3d at 823.

Cook's initial § 2254 petition, dispatched to this Court no earlier than February 4, 2019, thus is untimely. Equitable tolling is needed to avoid dismissal.

        **1.    Extraordinary circumstances prevented timely filing**

            **a.    Appointing counsel before filing a state petition**

As the Court noted above, things started to go wrong when the state district court appointed Connolly before Cook had filed a petition on his own. "Appointment of counsel through NRS 34.750(1) requires the filing of a petition, and the district court's decision to grant a request for counsel without first requiring the filing of a petition was in error. [FN2: We note that the district court was twice informed that no petition had been filed.]" *Flowers v. State*, 399 P.3d 914 (Table), 2017 WL 2980156, at *1. *Flowers* is an unpublished decision, but it may be cited as persuasive authority. *See* Nev. R. App. P. 36(c). Additionally, Connolly was Flowers' counsel, and thus had personal knowledge of the circumstances of that case. The Court will discuss this in greater detail below.

The problem with appointing counsel before a petition is filed is that it might mislead everyone involved into thinking that a petition had been filed, when in fact it had not been

7

1  filed. Based upon Cook's filings in the state courts, that seems to have been Connolly's
2  assumption for a while. The state-court minutes appointing her set a deadline for filing a
3  supplemental petition. Cook's December 21, 2017, motion asked for an extension of time
4  to file a supplement to the petition. Then, what Cook filed on September 11, 2018, was
5  titled as a petition for a writ of habeas corpus, not as a supplement to the petition. The
6  description of the case's procedural history included the unusual statement that the State
7  had agreed to the extensions that set September 7, 2018, as the due date. What this
8  indicates is that up through at least December 21, 2017, Connolly thought that a petition
9  already had been filed in the state district court. Sometime between then and September
10 7, 2018, Connolly must have realized that no such petition had been filed, because she
11 titled the petition correctly. Additionally, while she did not explicitly admit that the petition
12 was late, she noted that the State had agreed to that due date, perhaps as an explanation
13 why the petition was late.

14 On appeal from the denial of the state post-conviction petition, Betsy Allen replaced
15 Connolly to represent Cook. Cook stated, "Counsel for Cook, at the District Court level,
16 was appointed on May 10, 2017. . . . A subsequent status check was set for June 21,
17 2017, regarding the file. Counsel was given six months within which to file a Petition.
18 However, at the time of appointment, counsel was not made aware that a Petition was
19 never filed, pursuant to NRS 34.750(1). It is assumed, when counsel is appointed to direct
20 a case on [ineffective assistance of counsel], that an original Petition has been filed." (ECF
21 No. 75-1 at 27-28.)

### b. Respondents' agreement to extend the due date

Respondents agreed to extend the due date of the petition past the expiration of Nevada's statute of limitations. Fourteen years earlier, the Nevada Supreme Court held "that the parties in a post-conviction habeas proceeding cannot stipulate to disregard the statutory procedural default rules. We direct all counsel in the future not to enter into stipulations like the one in this case and direct the district courts not to adopt such stipulations." *State v. Haberstroh*, 69 P.3d 676, 682 (Nev. 2003), *as modified* (June 9,

8

2003). Two years later, the Nevada Supreme Court reinforced that application of procedural bars such as NRS § 34.726(1) is mandatory. *See State v. Eighth Judicial Dist. Court ex rel. County of Clark (Riker)*, 112 P.3d 1070, 1074 (Nev. 2005). Yet, in this case, respondents agreed to do what *Haberstroh* prohibited.

One possibility is that when respondents agreed to the extension of time, they also believed that a petition had been filed. If that was the case, then they were in the same situation as the respondents in *Rudin v. Myles*, 781 F.3d 1043, 1057 (9th Cir. 2014). In that case, up to a certain date everyone thought that a state petition had been filed. The Ninth Circuit held that equitable tolling was warranted up to the point where everyone realized that a petition had not been filed. *See id.* Likewise, in this case equitable tolling would be warranted up to the time when everyone learned that a petition had not been filed.

Another possibility is that respondents knew all along that a petition had not been filed. Owens agreed to an extension of the due date to file the state petition, knowing that the due date went past the expiration of the state statute of limitations. Owens then told Connolly that he could not sign a stipulation, likely because of *Haberstroh's* directive. After Cook filed his petition late, Owens then argued that the petition was untimely. This was Cook's argument in his reply to the response. (ECF No. 73-30 at 3.) Then, at the hearing, respondents argued that under *Haberstroh*, even though they had agreed to the extension, that extension still could not extend the time to file the petition.[2] (ECF No. 74-1 at 8.) If respondents tricked Cook into filing his petition late, then equitable tolling would be appropriate. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (citing in footnote *Glus v. Eastern Brooklyn Dist. Terminal*, 359 U.S. 231 (1959); *Holmberg v. Armbrecht*, 327 U.S. 392 (1946)).

///

///

---

[2]Throughout the hearing transcripts, *Haberstroh* is misspelled as *Habastro*. A different deputy district attorney represented respondents in the hearing.

9

The Court does not need to determine what respondents knew around the time that Cook asked for an extension. Whether through ignorance or trickery, respondents' agreement for Cook to file the petition late is an extraordinary circumstance.

### c. Post-conviction counsel's failure to ensure that a petition was filed

The Court also considers what Connolly did and failed to do. Cook argues that Connolly constructively abandoned him by assuming that a post-conviction habeas corpus petition had been filed before she was appointed. If an attorney abandons a client, then equitable tolling might be warranted. *See Maples v. Thomas*, 565 U.S. 266, 281 (2012). At all times, Connolly was litigating Cook's case, but she apparently assumed incorrectly that a post-conviction petition had been filed. The Court cannot conclude that that one error amounts to attorney abandonment.

Cook argues more persuasively Connolly's failure to ensure that a state petition had been filed is an extraordinary circumstance. On post-conviction appeal, as in this action, Cook argued that Connolly assumed incorrectly that a state petition had been filed. (ECF No. 75-1 at 27-28.) Addressing that argument, the Nevada Supreme Court stated:

> Counsel apparently was unaware that a pro se petition had not been filed before her appointment. But she easily could have ascertained whether a pro se petition had been filed by viewing the court's docket entries or asking her client. And even if counsel assumed she had been appointed after a pro se petition had been filed and therefore she would be filing a supplemental petition (if deemed necessary), it is difficult to conceive how she could have prepared a supplemental petition without reading the original petition. That postconviction counsel seemingly did not realize that a pro se petition had not been filed until the State's opposition is troubling.

(ECF No. 75-4 at 4.) Nonetheless, the Nevada Supreme Court held that Cook had not shown good cause because what happened was attorney error that did not rise to the level of ineffective assistance and thus was not an impediment external to the defense. (ECF No. 75-4 at 4-5.) But for the reasons given below, the Court would agree that an attorney's failure to check the docket or to ask the petitioner if a petition had been filed would not warrant equitable tolling. An attorney's miscalculation about the federal one-year period of limitation is not an extraordinary circumstance that warrants equitable tolling. *See Miranda*

*v. Castro*, 292 F.3d 1063, 1068 (9th Cir. 2002); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001). An attorney's failure to check a court docket is no more egregious than an attorney's failure to check a calendar or to calculate dates correctly.

However, in Cook's case something extraordinary did happen. In the unpublished *Flowers* decision, the Nevada Supreme Court held that under NRS § 34.750 state district courts must not appoint counsel before a petitioner has filed a petition. *See* 2017 WL 2980156, at *1. Connolly herself represented the petitioner in those post-conviction proceedings. Additionally, the Nevada Supreme Court decided *Flowers* three weeks after the state district court in Cook's case set the deadline for filing a "supplement" to the petition. Connolly had just received personal notice from the Nevada Supreme Court to check whether petitions had been filed in all her post-conviction cases, at a time when it would have made a difference to Cook, yet she still did not. To the Court, that is an extraordinary circumstance.

*Flowers* also held that good cause excused the time bar because the state district court on its own set a due date that fell after the state one-year period expired, after being warned twice about what it was doing. *See* 2017 WL 2980156, at *1. Connolly could not rely upon this holding of *Flowers* applying to Cook's case, because the circumstances were different. In Cook's case, Connolly accepted appointment, and the state district court set an initial due date for the "supplemental" petition, well before the expiration of both the state and the federal one-year periods. Connolly then asked for an extension that set the due date for the "supplemental" petition after expiration of the one-year periods. Once she learned that a petition had not been filed previously, she could not rely on *Flowers* as an automatic guarantee that the state courts would excuse the time bar, in Cook's case. She, not the state district court, was the reason why the due date was extended past the expiration of the one-year period. An argument of official interference would not be successful.

Adding to the problem is what Connolly failed to do after learning that the state petition was late. She tried to save Cook's state petition, but Cook had another avenue for

11

relief for which Connolly did not represent him: A habeas corpus petition in this Court under § 2254. After the state district court denied the petition, she told Cook that she should have ensured that the petition was filed timely, and she prepared a protective petition to file in this court. Those were sound actions, but the wonder is why she did not act earlier, when she learned that she had a timeliness problem. If she had told Cook earlier about the problem, then Cook could have commenced this action earlier.

### 2.   Cook acted diligently

Connolly wrote to Cook on January 9, 2019, that the state district court denied his petition as time-barred, and that she would prepare a protective petition to file in this Court while she proceeded with the appeal. Cook sent that petition to the Court within a month, demonstrating diligence. (*See* ECF No. 6.)

The Court appointed the Federal Public Defender to represent Cook on February 25, 2019. Cook then filed his counseled first amended petition within a month, again demonstrating diligence. (*See* ECF No. 14 (filed under seal); ECF No. 31.)

In short, once Cook himself knew of the problem with the timeliness of a federal habeas corpus action, he acted with diligence to protect his rights. The Court thus finds that equitable tolling is warranted up to the filing of the first amended petition on March 21, 2019.

### 3.   The Court does not address Cook's medical conditions

Cook also argues that equitable tolling is warranted because he had debilitating headaches and migraines. (ECF No. 81 at 15.) The Court does not address this argument because the Court has determined that equitable tolling is warranted for other reasons.

### 4.   All grounds relate back

Even though the Court has determined that equitable tolling has saved the initial petition and the first amended petition, Cook filed his third amended petition on January 7, 2021. The grounds in the third amended petition thus must relate back to the initial petition for the first amended petition to be timely.

///

Respondents present no claim-by-claim argument why the grounds in the third amended petition do not relate back. They argue only that the third amended petition cannot relate back to any earlier petition because the earlier petitions themselves were untimely; a contention that the Court rejects above. (*See* ECF No. 64 at 8.) Cook provides detailed arguments how each ground, and each part of a ground, relates back to the first amended petition. (ECF No. 81 at 19-22.)[3]

The Court has read Cook's arguments for relation back, and the Court has compared each ground in the third amended petition with the grounds to which Cook argues they relate back. With one exception, the Court agrees in full with Cook's arguments, and the Court need not reproduce them here.

The one exception is ground 5 of the third amended petition. In that ground, Cook alleges that the state trial court violated the Confrontation Clause of the Sixth Amendment when it allowed a police officer to give hearsay testimony about his interviews with B.C.,[4] "including the allegations of abuse B.C. apparently disclosed during those interviews." (ECF No. 64 at 25.) Cook argues that this ground relates back to ground 5 of the first amended petition. (ECF No. 81 at 21.) However, in ground 5 of the first amended petition, Cook claimed that the trial court violated the Confrontation Clause when it limited Cook's ability to cross-examine B.C., and when it did not allow a Child Protective Services worker to testify. (ECF No. 31 at 33-34.) Cook erroneously referred to the wrong ground. Ground 8 of the first amended petition contains the claim that now is ground 5 of the third amended petition. (*Compare* ECF No. 31 at 42-43 *with* ECF No. 64 at 25.) Ground 5 of the third amended petition thus does relate back to first amended petition.

///

///

---

[3]It is not clear if Respondents intended to reply to Cook's arguments because Respondents filed a reply from the wrong action.

[4]B.C. is Cook's daughter and the person whom he was convicted of sexually abusing.

13

**B.     All grounds are exhausted**

Respondents argue that grounds 2, 3, 6, and 7 are unexhausted. The Court disagrees.

### 1.     Ground 2 is exhausted

Ground 2 contains claims that the trial court erroneously admitted evidence of other uncharged conduct against Cook. Cook has not formally divided ground 2 into parts, but for ease of reference the Court will.

#### a.     Ground 2[1]

Cook married Kaura Cook. Kaura Cook had a sister, Shawn Wilkins. Shawn Wilkins had a daughter, A.M.W. (ECF No. 49 at 2-3.) A.M.W. accused Cook of sexually abusing her in Lancaster, California; Cook denies the accusation. (*Id.* at 8-9.) In ground 2[1], Cook alleges that the trial court erroneously allowed the prosecution to present evidence of A.M.W.'s accusations through the testimonies of A.M.W., Shawn Wilkins, and Kaura Cook. Cook also alleges that the prosecution discussed A.M.W.'s accusations at length during closing arguments. Respondents acknowledge that Cook argued on direct appeal that the trial court erroneously allowed the evidence, but they argue that Cook has not presented the fact that the prosecution discussed A.M.W.'s accusations at length during closing arguments. That additional fact does not fundamentally alter the claim. If the district court allows evidence favorable to the prosecution to be admitted, then it is expected that the prosecution would address that evidence in its closing arguments. *See Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). Ground 2[1] is exhausted.

#### b.     Ground 2[2]

Cook separated from Kaura Cook. He then married Guadalupe Cook. (ECF No. 49 at 3.) In ground 2[2], Cook alleges that the trial court erroneously allowed the prosecution to present evidence that Cook had lied to Guadalupe Cook about his relationship with Kaura Cook, and that Cook was a bigamist. Among that evidence, Guadalupe Cook said that Cook told her that he and Kaura Cook were under the influence of drugs when they went to Las Vegas to get married, thus suggesting that Cook was a drug user. (*Id.* at 20.)

Respondents argue that on direct appeal Cook did not argue that the trial court had improperly allowed the evidence of Cook's drug use. Respondents' argument is incorrect. Cook argued on direct appeal that Guadalupe Cook testified that "Brian explained Kaura and he were under the influence of drugs and came to Las Vegas to get married, but he never sent in the paperwork to make the marriage legal." (ECF No. 72-19 at 46.) That part of ground 2[2] is exhausted.

Respondents also argue that Cook did not argue on direct appeal that the prosecution discussed this evidence during the closing arguments. The Court's determination that such an allegation does not fundamentally alter ground 2[1] applies with equal force for ground 2[2].

### c. Ground 2[3]

In ground 2[3], Cook argues that the trial court erroneously admitted evidence that Cook had physically abused his son Anthony.[5] This was evidence that Cook introduced on cross-examination of Anthony, in the hope of then impeaching Anthony with the testimony of a Child Protective Services employee that the claims were not substantiated. However, the trial court ruled that Nevada law does not allow a party to use extrinsic evidence to prove a specific instance of Anthony's conduct for the purpose of attacking his credibility. *See* NRS § 50.085(3). Respondents correctly argue that Cook never presented this argument on direct appeal. However, on appeal from the denial of the post-conviction petition, as part of the claim of ineffective assistance for introducing this evidence, Cook also argued that the trial court on its own motion should have given a limiting instruction, under the Nevada Supreme Court's direction to district courts in *Tavares v. State*, 20 P.3d 1128 (Nev. 2001). (ECF No. 75-1 at 20.) That argument is sufficient to exhaust ground 2[3].

---

[5]*See* ECF No. 26 for the Court's method of referring to minor children who have similar or identical initials.

### 2. Ground 3 is exhausted

In ground 3, Cook claims that the prosecution improperly labeled him "guilty as charged" in a PowerPoint presentation during the opening statements. Cook raised this claim on direct appeal and the Nevada Supreme Court, using a plain-error analysis, determined that the claim was without merit. (ECF No. 73-13 at 5-6.) Cook argues in ground 3 that this was a structural error, and Respondents argue that Cook did not present that part of the claim to the Nevada Supreme Court. The Court disagrees. Cook presented the relevant facts and legal theory to the Nevada Supreme Court. Changing the standard of review does not change the nature of the claim itself. Ground 3 is exhausted.

### 3. Ground 6 is exhausted

Ground 6 is a cumulative-error claim based upon grounds 1 through 5. Respondents argue that to the extent grounds 2 and 3 are not exhausted, ground 6 also is not exhausted. The Court has determined that grounds 2 and 3 are exhausted. Consequently, ground 6 is exhausted.

### 4. Ground 7 is exhausted

Ground 7 contains five claims of ineffective assistance of counsel, labeled A through E. The court finds that they all are exhausted.

#### a. Ground 7(A)

In ground 7(A), Cook claims that trial counsel failed to object to the prosecution's PowerPoint presentation in the opening statement that labeled Cook "guilty as charged." Cook raised this claim in his state post-conviction habeas corpus petition. Respondents argue that Cook now also is claiming that trial counsel failed to move for a mistrial after the opening statements and that trial counsel was on notice of a similar PowerPoint presentation that the Nevada Supreme Court had determined was prejudicial. *See Watters v. State*, 313 P.3d 243 (Nev. 2013). These additions do not fundamentally alter the claim. *See Hillery*, 474 U.S. at 260. Ground 7(A) is exhausted.

///

///

16

### b. Ground 7(B)

The Court noted with respect to ground 2[1] that A.M.W. testified that Cook had abused her. During cross-examination, A.M.W. had an outburst and left the courtroom. (ECF No. 49 at 14-15.) In ground 7(B), Cook claims that trial counsel failed to move for a mistrial after A.M.W.'s outburst. Cook raised this claim in his state post-conviction habeas corpus petition. Respondents argue that Cook now also is alleging that trial counsel had no strategic reason not to move for a mistrial and that if trial counsel were to testify truthfully, then they would agree. The Court agrees with Cook. These statements do not fundamentally alter the claim. *See Hillery*, 474 U.S. at 260. Cook makes these statements now in anticipation of the common defense that trial counsel had a strategic reason not to move for a mistrial. Ground 7(B) is exhausted.

### c. Ground 7(C)

As the Court noted with respect to ground 2[3], on the cross-examination of Anthony trial counsel introduced evidence that Cook had physically assaulted Anthony. In ground 7(C), Cook claims that trial counsel provided ineffective assistance by introducing this evidence without first ensuring that trial counsel could then impeach Anthony with testimony of a Child Protective Services officer who did not substantiate Anthony's allegations. Cook raised this claim in his state post-conviction habeas corpus petition. Respondents argue that Cook now also alleges that the introduction of that evidence opened the door to other prejudicial evidence about Cook's physical abuse, that counsel provided ineffective assistance by eliciting testimony from B.C. regarding Cook physically abusing Anthony and B.C, and new prejudice arguments, including the theory that the jury inferred likelihood of sexual abuse based on the evidence of physical abuse. The Court agrees with Cook that these new allegations do not fundamentally alter the claim, which is that counsel provided ineffective assistance by introducing evidence that Cook had physically abused Anthony. *See Hillery*, 474 U.S. at 260. Ground 7(C) is exhausted.

///

///

####     d.     Ground 7(D)

As the Court noted with respect to ground 2[2], evidence of Cook's bigamy, drug use, and lies about his first marriage was introduced. In ground 7(D), Cook claims that trial counsel failed to object to the introduction of this evidence. Cook raised this claim in his state post-conviction habeas corpus petition. Respondents argue that Cook now also alleges that counsel had no legitimate reason not to object, that if counsel were to testify truthfully then they would agree, and, with respect to the prejudicial effect, that these failures to object had a cascading impact on the jury's verdict. The Court agrees with Cook that these allegations do not fundamentally alter the claim. *See Hillery*, 474 U.S. at 260. As with ground 7(B), the statements about no legitimate reason not to object and trial counsel's possible testimony are made in anticipation of the common defense that trial counsel had a strategic reason not to object. The argument regarding prejudice also does not fundamentally alter what Cook presented to the state courts.

####     e.     Ground 7(E)

On August 25, 2010, police arrested and interrogated Cook. The interrogation was recorded. Cook claims that he unambiguously asked for an attorney before the recorded portions of the interrogation began. Towards the end of the recorded portions, he asked for an attorney, and police stopped the interrogation. On that same day, Cook signed a consent form for the police to search his residence and his pickup truck. Trial counsel moved to suppress Cook's statements to the police, but trial counsel did not move to suppress the evidence found in the searches of the residence and the pickup truck. (ECF No. 49 at 31-33.) In Ground 7(E), Cook claims that trial counsel should have moved to suppress that evidence as well as his statements to the police. Respondents argue that in the state post-conviction habeas corpus petition Cook claimed that trial counsel failed to challenge the consent to search Cook's residence, but Cook did not claim that trial counsel failed to challenge the consent to search Cook's vehicle. However, the consent to search the residence and the vehicle came from the same form. (ECF No. 39-5.) The operative fact is that consent form, not the details in that form. The legal issue is whether Cook

signed that consent form after asking for an attorney, and that issue is the same regardless of the subsequent searches of the residence and the vehicle. The additional allegations do not fundamentally alter the claim. *See Hillery*, 474 U.S. at 260. Ground 7(E) is exhausted.

### C. Procedural Default

Separate from the issue of timeliness, all of ground 7 is procedurally defaulted. Cook raised those claims in his state post-conviction habeas corpus petition, and that petition was time-barred under NRS § 34.726(1).

#### 1. Cook has shown good cause

The Court's determination of equitable tolling applies equally as a determination that Cook has shown good cause to excuse the procedural default of NRS § 34.726(1).

#### 2. The Court defers a determination on prejudice

The Court's determination of equitable tolling is inapplicable to the question of prejudice. For example, if Cook filed a state petition and a federal petition simultaneously, after expiration of the state one-year period but before expiration of the federal one-year period, then Cook would not need to demonstrate equitable tolling because the federal petition would be timely, but Cook would need to demonstrate cause and prejudice to excuse the procedural default caused by the state's time bar. Conversely, if Cook filed a state petition and a federal petition simultaneously, after expiration of the federal one-year period but before expiration of the state one-year period,[6] then the federal petition would not be procedurally defaulted, but Cook would need to demonstrate equitable tolling.

Cook notes that the Court might want to defer a determination on prejudice because that inquiry overlaps with the ultimate merits of the claims. (ECF No. 81 at 31.) The Court agrees.

---

[6]Although unusual, this can happen if a person files a petition for a writ of certiorari after the direct appeal. The federal one-year period would start to run after the Supreme Court's denial or decision on the merits. The state one-year period would start to run after the Nevada Supreme Court issued its remittitur, which would be after the Supreme Court's decision. *See* Nev. R. App. P. 41(b)(3).

## V.  CONCLUSION

It is therefore ordered that Respondents' motion to dismiss (ECF No. 64) is denied in part. The Court defers consideration of whether Petitioner has demonstrated prejudice to excuse the procedural default of ground 7 until the Court reaches the merits of the petition.

The Clerk of Court is directed to strike Respondents' reply (ECF No. 90).

It is further ordered that Respondents will have 60 days from the date of entry of this order to file and serve an answer, which must comply with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. Petitioner will have 30 days from the date on which the answer is served to file a reply.

DATED THIS 10th Day of March 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE