UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

***

BRIAN CLAY COOK,

                                    Petitioner,

        v.

JAMES DZURENDA,[1] *et al.*,

                                    Respondents.

Case No. 3:19-cv-00081-MMD-CLB

ORDER

## I.    SUMMARY

Petitioner Brian Clay Cook filed a third amended petition for writ of *habeas corpus* under 28 U.S.C. § 2254. (ECF No. 49 ("Petition").) This matter is before the Court for adjudication on the merits of the remaining grounds in the Petition. For the reasons discussed below, the Court denies the Petition and denies Petitioner a certificate of appealability.

## II.   BACKGROUND

### A.  Conviction and Appeal

Petitioner challenges a 2014 conviction and sentence imposed by the Eighth Judicial District Court for Clark County. Following a jury trial, Petitioner was found guilty of three counts of sexual assault with a minor under the age of fourteen, two counts of

---

[1]The state corrections department's inmate locator page indicates that Petitioner is incarcerated at the Lovelock Correctional Center ("LCC"). *See* https://ofdsearch.doc.nv.gov/form.php (retrieved November 2023 under identification number 1114245). The department's website reflects that Tim Garrett is the warden of that facility. *See* https://doc.nv.gov/Facilities/SDCC_Facility/ (retrieved November 2023). At the end of this order, the Court directs the Clerk of Court to substitute Petitioner's current immediate physical custodian, Tim Garrett, as Respondent for the prior Respondent James Dzurenda pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

sexual assault with a minor under the age of sixteen, and one count of battery with intent to commit sexual assault. (ECF No. 71-3.) The state court entered a judgment of conviction, and sentenced Petitioner to life with a minimum parole eligibility of twenty years. (*Id.*) Petitioner appealed, and the Nevada Supreme Court affirmed the conviction on direct appeal. (ECF No. 73-13.)

### B. Facts Underlying Conviction

In 2002, Petitioner moved into a home in Las Vegas with his second wife, Guadalupe, his oldest son, Anthony, his oldest daughter, B.C., his middle son, B.A.C., and his youngest daughter, A.C. (ECF No. 68-1 at 16-17.) From 2002 to 2010, Petitioner sexually abused his daughter, B.C., beginning from the age of 8 or 9 years old. (*Id.* at 20.) At trial, B.C. testified that Petitioner would attempt to place his penis in her mouth, and eventually placed his penis in her mouth. (*Id.* at 19-21, 23, 25, 29.) B.C. also testified as to occasions where Petitioner attempted to and/or did anally penetrate B.C. (*Id.* at 25-27, 29-30.)

Petitioner began to show B.C. pornographic photos, magazines, and DVDs. (*Id.* at 28-29.) B.C. testified that Petitioner kept his magazines hidden under the backseat of his truck, his DVDs hidden at the top of the entertainment center in the living room, and photos hidden in an SD card in his phone. (*Id.*) B.C. testified that incidents with Petitioner occurred one to two, maybe three times a week, until after B.C. turned sixteen years old. (*Id.* at 21, 25-27, 29.)

B.A.C. testified at trial that he witnessed Petitioner lying in bed with B.C. (ECF No. 68-4 at 35.) B.A.C. told Guadalupe what he saw. (*Id.* at 35-36.) When Guadalupe asked B.C. and Petitioner about the incident, both Petitioner and B.C. denied it. (ECF No. 68-1 at 27.) Petitioner instructed B.C. to deny it if Guadalupe asked her about the incident. (*Id.*) B.C. testified that she did not tell anyone what happened for a long time because she was scared. (*Id.* at 19-20.) Petitioner told B.C. not to tell anyone because "he would deny it and [B.C] would be ruining the family," and Petitioner threatened to kill B.C. if she told anyone about the assaults. (*Id.* at 32-33.)

Anthony testified at trial that he observed from a mirror Petitioner lying in bed with B.C. and that Petitioner appeared to be on top of B.C. (ECF No. 68-2 at 14.) Anthony testified to another incident where he observed Petitioner go into B.C.'s room. (*Id.* at 16.) As Anthony walked past B.C.'s room with the door partially open, he observed Petitioner standing with his underwear partially down and B.C. was kneeling in front of Petitioner. (*Id.*) Anthony used the bathroom and by the time he left the bathroom, Petitioner was not in B.C.'s room and had put on shorts. (*Id.* at 17.)

After speaking to a friend that was a police officer, Anthony spoke to B.C. (*Id.* at 19.) B.C. eventually confessed to Anthony that Petitioner had been assaulting her. (*Id.*) Anthony and B.C. made a plan for B.C. to leave the house without drawing attention and she left the house days later. (*Id.* at 20.)

**C.  State Post-Conviction Proceedings and Federal Habeas Action**

The state district court appointed counsel for Petitioner before Petitioner filed a post-conviction state habeas petition. (ECF No. 65-1 at 38.) Appointed counsel then requested an extension to file the state habeas petition, which the state court granted. (*Id.* at 42.) In September 2018, Petitioner through counsel filed a state habeas petition. (ECF No. 73-24.) The state district court denied the state habeas petition as untimely. (ECF No. 74-2 at 25-28.)

In February 2019, Petitioner initiated this federal habeas proceeding *pro se.* (ECF No. 6.) The Court appointed counsel on initial review and he filed a counseled first amended petition. (ECF No. 14.) Petitioner filed a second amended petition and sought leave to stay the action while his post-conviction appeal was pending in the Nevada Supreme Court. (ECF No. 45.) After reopening the action, Petitioner filed his third amended petition. (ECF No. 49.)

Respondents moved to dismiss this action as untimely. (ECF No. 64.) The Court denied the motion to dismiss, in part, finding that this action was untimely, but that equitable tolling was warranted. (ECF No. 91.) The Court deferred consideration of

1   whether Petitioner can demonstrate prejudice to overcome procedural default of Ground

2   7 until the time of merits review. (*Id.*)

3   **III.    LEGAL STANDARD**

4           **A.  Review under the Antiterrorism and Effective Death Penalty Act**

5           28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in

6   *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act

7   ("AEDPA"):

8           An application for a writ of habeas corpus on behalf of a person in custody
            pursuant to the judgment of a State court shall not be granted with respect

9           to any claim that was adjudicated on the merits in State court proceedings
            unless the adjudication of the claim –

10

11          (1) resulted in a decision that was contrary to, or involved an unreasonable
            application of, clearly established Federal law, as determined by the

12          Supreme Court of the United States; or
            (2) resulted in a decision that was based on an unreasonable determination

13          of the facts in light of the evidence presented in the State court proceeding.

14  28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court

15  precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that

16  contradicts the governing law set forth in [Supreme Court] cases" or "if the state court

17  confronts a set of facts that are materially indistinguishable from a decision of [the

18  Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*,

19  529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state

20  court decision is an unreasonable application of established Supreme Court precedent

21  under § 2254(d)(1), "if the state court identifies the correct governing legal principle from

22  [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

23  prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable

24  application' clause requires the state court decision to be more than incorrect or

25  erroneous. The state court's application of clearly established law must be objectively

26  unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409-10).

27          The Supreme Court has instructed that a "state court's determination that a claim

28  lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

4

on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the standard as "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

### B.  Standard for Evaluation of Ineffective Assistance of Counsel Claims

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring Petitioner to demonstrate that: (1) the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the attorney's deficient performance prejudiced Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). Courts considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d

987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## IV.    DISCUSSION

The Petition presents seven grounds for relief. (ECF No. 49.) The Court will address them in turn.

### A. Ground 1

In Ground 1, Petitioner alleges trial court error based on two theories related to witness conduct. First, Petitioner alleges that a witness, A.M.W., had an outburst during trial against Petitioner and the trial court erred because it did not declare a mistrial or poll and properly instruct the jury. (ECF No. 116 at 13-17.) Second, Petitioner alleges that the trial court permitted the State's witnesses to consult with each other during breaks in their testimony but did not allow a defense witness to consult with the defense during a break. (ECF No. 49 at 14-18.)

#### i.   Additional Background Information Regarding Witness Outburst

A.M.W. was Petitioner's ex-wife's niece that had temporarily resided with Petitioner and his ex-wife in California when A.M.W. was four years old. (ECF No. 68-3 at 18.) The State called A.M.W to testify to her separate allegation that Petitioner abused her. (*Id.*) During cross-examination, defense counsel confronted A.M.W. with inconsistent statements regarding her age when she disclosed the sexual abuse to her mother. (*Id.* at 28-29.) A.M.W. requested a break and as she was exiting the courtroom, A.M.W. made comments directed at Petitioner. (*Id.* at 29.) The trial court provided as follows:

**Q:**    What didn't you understand about how old you were –

**A:**    Can I go to my mom, please?

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**The Court:** We'll take a short break, Miss [W].

I will instruct the jury to disregard any comments made by the witness as she steps out of the courtroom, and we'll resume as soon as we are able.

(*Id.*)

Outside the presence of the jury, the trial court further provided:

Let's complete the record, that the court ordered immediately upon her exit of the courtroom the jurors to disregard any comments made by the witness as she exited the courtroom. I'm not sure if they could hear them or not. I heard part of them, but, perhaps not all of them, but admonished them to disregard it.
. . .
The comments were made, just to be clear for the record, at the very back of the courtroom as she was exiting through the doors into the alcove there. And, again, as she exited, the court instructed the jury to disregard, and I don't believe anything should be – well, I'll just leave it at that, but I would like to have her brought in now so we can see if we can resume. . .

(*Id.* at 29-30.)

Defense filed a motion to clarify the record and defense counsel submitted a declaration asserting that A.M.W. yelled that Petitioner was guilty and a "child molester." (ECF No. 72-8 at 10.) In the declaration, defense counsel noted that the comments were loud enough to be heard by defense counsel, the State, the trial judge, and presumably the jury. (*Id.*) At a hearing on the motion, the trial court noted that it reviewed video recording and that A.M.W. said "something along the lines of ... "fucking – sick – fuck," and A.M.W. said "something else, but you really cannot make out what that is. There is something along the lines of, quote, 'the person that did it' – but there's nothing there beyond that that would indicate any reference specifically to [Petitioner] being a child molester or being guilty." (ECF No. 72-11 at 7.)

**ii.  State Court Determination**

On direct appeal, the Nevada Supreme Court held:

[Petitioner] argues that [A.M.W.] prejudiced him by uttering obscenities and allegations while leaving the courtroom. We conclude that there was no error regarding the remarks because the district court promptly instructed the jury to disregard the remarks and the jury is presumed to follow its instructions. (citation omitted)

(ECF No. 73-13 at 3.)

### iii. Conclusion

The Nevada Supreme Court's decision is not contrary to nor an unreasonable application of federal law as determined by the United States Supreme Court and is not based on unreasonable determinations of fact in the state court record. Here, it is undisputed that the trial court instructed the jury to disregard the comments that A.M.W. made while she was exiting the courtroom. The United States Supreme Court has long held that "[a] jury is presumed to follow … [and] is [also] presumed to understand" a judge's instructions. *Weeks v. Angelone*, 528 U.S. 225, 235 (2000).

To overcome the presumption that the jury understood and followed this instruction, and to show A.M.W.'s comments were prejudicial, Petitioner cites to *United States v. Bland*, 908 F.3d 471, 473 (9th Cir. 1990), in which the Ninth Circuit found harmful error that was not cured with limiting instruction where the trial court commented that defendant on a firearms charge had an outstanding warrant for child molestation. (ECF No. 116 at 16.) In addition, Petitioner cites to *United States v. Gillespie*, 852 F.2d 475, 479 (9th Cir. 1988), where the Ninth Circuit held that the district court committed reversible error by admitting testimony of clinical psychologist on characteristics common to child molesters and admitting evidence from which the jury could infer that defendant had a homosexual relationship. (*Id.*)

Here, however, it was the witness, not the court or an expert witness, who made the comments while exiting the courtroom. Further, the witness's comments, although emotionally charged, did not impart any new information to the jurors as the witness was testifying as to her sexual assault allegation against Petitioner. In addition, the comments were directed at Petitioner, not the jury, and it was followed by an appropriate admonition from the trial court. The state appellate court's finding of no constitutional error was therefore not an unreasonable application of federal law as determined by the United States Supreme Court. The Court denies habeas relief as to this claim in Ground 1.

///

///

### iv. Additional Background Regarding Witness Consultation and Witness Breaks

#### a. A.M.W.'s Testimony

Petitioner alleges that the trial court permitted A.M.W. and B.C. to take several breaks during their testimony and were permitted to confer with other witnesses. (ECF No. 116 at 18.) During cross-examination when defense counsel impeached A.M.W. regarding inconsistent statements, the trial court permitted A.M.W. to take a ten-minute break. Because A.M.W. asked the court, "[c]an I go to my mom, please?," Petitioner asserts that A.M.W. conferred with her mother, Shawn Wilkins ("Wilkins"). (*Id.*) Upon A.M.W.'s return, the trial court noted that A.M.W. began exiting the area before the court gave her permission. (ECF No. 49 at 16.) The trial court did not inquire whether A.M.W. conferred with Wilkins during the ten-minute break. (ECF No. 116 at 18.)

#### b. B.C.'s Testimony

The trial court permitted B.C. to take a five-minute break as the prosecutor posed questions about the frequency of abuse. (ECF No. 116 at 19.) Testimony resumed after B.C. returned. (ECF No. 49 at 17.) In addition, the trial court permitted B.C. to take a restroom break during cross-examination after being impeached by trial counsel regarding inconsistent statements made to law enforcement during her initial interview. (ECF No. 116 at 19.) The trial court did not admonish B.C. not to discuss her testimony before permitting the breaks. (*Id.*)

#### c. Guadalupe Cook's Testimony

The State called Guadalupe Cook ("Guadalupe") to testify but did not finish her direct testimony before the trial court adjourned proceedings for the day. (ECF No. 49 at 17.) The trial court provided, "[m]iss Cook, we'll see you tomorrow. Of course, it's important that your testimony remain free of any other interests," and Guadalupe left. (ECF No. 68-at 49.) The trial court conferred with counsel and noted that the court "has not admonished witnesses in that regard, did admonish this witness somewhat to make sure that she returned here and continued to testify uninterrupted as if she had testified the remainder of today." (*Id.* at 50.) Because the State was concerned that defense

1  counsel or Petitioner would speak to Guadalupe overnight, the trial court admonished

2  counsel and Petitioner not to speak with her. (*Id.*) The trial court advised defense counsel

3  that they could later prep and recall her as a defense witness if they wished but reiterated

4  that defense counsel should not speak to Guadalupe in the middle of her direct

5  examination. (*Id.* at 51.)

6  **v. State Court Determination**

7  The Nevada Supreme Court held:

> [Petitioner] argues that the district court violated his rights to due process
> and a fair trial by allowing two witnesses to leave the courtroom during their
> testimony without admonishments not to discuss the case. He also argues
> that the witness [A.M.W.] improperly spoke with other witnesses during a
> recess. [Petitioner's] contention that [A.M.W.] spoke with anyone during the
> recess is unsupported by any evidence that she, in fact, did so. *Cf. United
> States v. Greschner*, 802 F.2d 373, 376 (10th Cir. 1986) (reviewing
> analogous federal rule and concluding that mere speculation about
> possibility of conversations between witnesses does not provide reviewing
> court with meaningful guidance in assessing prejudice to defendant or
> abuse of discretion and provides no basis for reversal). Even assuming
> [A.M.W.] spoke with her mother during the recess, we conclude that
> [Petitioner] was not prejudiced by any such conversation when neither
> [A.M.W.] nor her mother's testimony differed materially from their *Petrocelli*
> hearing testimony, such that the testimony cannot be said to have been
> influenced by any conversation at recess. *See Evans v. State*, 112 Nev.
> 1172, 1188-89, 926 P.2d 265, 276 (1996). Likewise, [Petitioner] fails to
> identify any prejudice or error in connection with the victim's taking a brief
> recess to use the restroom during her testimony. [Petitioner's] reliance on
> *Perry v. Leeke*, is misplaced as *Perry* addressed whether a defendant's
> right to counsel was infringed by limiting the defendant from speaking with
> counsel during recess that interrupted his testimony. 488 U.S. 272, 280-81
> (1989). While *Perry* recognized in dicta the trial court's authority to limit a
> witness from consulting with third parties, the Supreme Court did not
> conclude that a trial court must prevent any contact between a witness and
> third parties during a recess, *see id.* at 282-84, and [Petitioner] provides no
> authority for the proposition that the district court must admonish a witness
> when a recess is taken during the witness's testimony. Accordingly, we
> conclude that this claim fails.

23  (ECF No. 73-13 at 2-3.)

24  **vi. Conclusion**

25  The Nevada Supreme Court's decision is not contrary to nor an unreasonable

26  application of federal law as determined by the United States Supreme Court and is not

27  based on unreasonable determinations of fact in the state court record.

28  ///

1      Petitioner relies on *Perry*, in the assertion that "[c]ross-examination often depends

2 for its effectiveness on the ability of counsel to punch holes in a witness' testimony at just

3 the right time, in just the right way." 488 U.S. at 282. The Supreme Court in *Perry*,

4 however, clarifies as follows:

5          Our conclusion does not mean that trial judges must forbid consultation
           between a defendant and his counsel during such brief recesses. As a
6          matter of discretion in individual cases, or of practice for individual trial
           judges, or indeed, as a matter of law in some States, it may well be
7          appropriate to permit such consultation. We merely hold that the Federal
           Constitution does not compel every trial judge to allow the defendant to
8          consult with his lawyer while his testimony is in progress if the judge decides
           that there is a good reason to interrupt the trial for a few minutes.
9

10 488 U.S. at 284-85. The import of the Supreme Court's decision is that defendant has no

11 constitutional right to counsel while the defendant is engaged in testimony. *See id*. As

12 stated by the Nevada Supreme Court, although *Perry* recognized the trial court's authority

13 to limit a witness from consulting with third parties, the Supreme Court did not conclude

14 that a trial court must prevent any contact between a witness and third parties during a

15 recess. *See id*.

16      Because the trial court adjourned proceedings before the State completed its direct

17 examination of Guadalupe, the trial court admonished the witness "to make sure that she

18 returned here and continued to testify uninterrupted as if she had testified the remainder

19 of today." (ECF No. 68-at 49.) Although the trial court did not similarly admonish A.M.W.

20 and B.C. before their ten and five-minute breaks, Petitioner fails to demonstrate that the

21 trial court violated his constitutional rights in this regard. The Confrontation Clause

22 guarantees only "an opportunity for effective cross-examination." *Delaware v. Fensterer*,

23 474 U.S. 15, 20 (1985). Accordingly, the Court denies habeas relief as to Ground 1.

24 ///

25 ///

26 ///

27 ///

28 ///

**B. Ground 2**

In Ground 2, Petitioner alleges that the trial court erroneously admitted bad act evidence that was highly prejudicial. (ECF No. 49 at 19-20.) He asserts that the trial court erred in allowing evidence as to: (1) A.M.W.'s allegations of assault against Petitioner; (2) bigamy, in that Petitioner lied to Guadalupe about his first marriage; and (3) Petitioner's physical abuse of Anthony and B.C. (*Id.*)

**i.  Additional Background Information**

**a.  Evidence Related to A.M.W.'s Allegations against Petitioner**

The trial court permitted testimony from A.M.W., A.M.W.'s mother, Wilkins, and Petitioner's ex-wife, Kaura, regarding A.M.W.'s allegations that Petitioner sexually assaulted her and her disclosure of the sexual assault to Wilkins and Kaura. A.M.W. testified to the details of the incident with Petitioner that occurred when she was four years old when they resided in California. (ECF No. 68-3 at 17.) She further testified that she did not tell anyone about the incident until she was approximately seven years old when she told her mother and her aunt, Kaura. (*Id.* at 24-25.) Wilkins testified that A.M.W. disclosed the incident to her and Kaura when A.M.W. was seven or eight years old. (*Id.* at 35.) Kaura testified that she attempted to report the incident to police but was turned away because she could not provide Petitioner's location. (ECF No. 70-1 at 15.)

**b.  Evidence Related to Petitioner's Bigamy**

At trial, the State introduced evidence that Petitioner was simultaneously married to Kaura and Guadalupe and therefore engaged in bigamy. Upon questioning from the State as to whether Petitioner disclosed his marriage to Kaura, Guadalupe testified that Petitioner told her that he was under the influence of drugs when he married Kaura, but that Petitioner never submitted the marriage paperwork. (ECF No. 68-3 at 41.) In addition, Kaura testified that she married Petitioner in March 1992 and that they had never divorced following their separation. (ECF No. 70-1 at 5-6.)

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ii. State Court Determination

On direct appeal, the Nevada Supreme Court held:

> [Petitioner] argues that the district court abused its discretion by admitting two instances of prior-bad-act evidence. Evidence of prior bad acts is presumed inadmissible, but may be admitted for limited purposes after a *Petrocelli* hearing in which the State shows (1) relevance for a nonpropensity purpose, (2) proof by clear and convincing evidence, and (3) that the danger of unfair prejudice does not substantially outweigh the probative value of the evidence. *Bigpond v. State*, 128 Nev. 108, 116-17, 270 P.3d 1244, 1249-50 (2012). [Petitioner] first claims that evidence of a prior sexual assault against a minor was not proven by clear and convincing evidence and was more prejudicial than probative. We disagree. The victim testified with particularity about details of the incident and other witnesses corroborated parts of the account, and the probative value of explaining the motivation to sexually assault young female family members substantially outweighs the danger of unfair prejudice, particularly where substantial evidence supports the convictions for sexually assaulting the victim, *Ledbetter v. State*, 122 Nev. 252, 263, 129 P.3d 671, 679 (2006). [Petitioner] also claims that evidence of his bigamy was not reviewed in a *Petrocelli* hearing, and we review this unpreserved claim for plain error. *Mclellen v. State*, 124 Nev. 263, 269, 182 P.3d 106, 110 (2008). While we agree, the admission did not affect his substantial rights when that evidence was used only to impeach his second wife's credibility, it did not suggest a propensity to commit sexual assault against a child, and substantial evidence supported his convictions, such that the outcome would have been the same absent admission of the evidence. *See Chappell v. State*, 114 Nev. 1403, 1407, 972 P.2d 838, 840 (1998). Accordingly, we conclude that this claim fails.

(ECF No. 73-13 at 4-5.)

### iii. Conclusion

The Nevada Supreme Court's decision is not contrary to nor an unreasonable application of federal law as determined by the United States Supreme Court and is not based on unreasonable determinations of fact in the state court record.

In order for the admission of evidence to provide a basis for habeas relief, the evidence must have "rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). The erroneous admission of evidence constitutes a constitutional violation only when "there are no permissible inferences the jury may draw from the evidence" and that evidence is "of such quality as necessarily prevents a fair trial." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991)

1    (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)) (internal

2    quotation marks omitted).

3          Petitioner does not carry his burden of demonstrating that the admission of this

4    evidence rendered his trial fundamentally unfair in violation of due process. The trial court

5    conducted a *Petrocelli* hearing regarding A.M.W.'s allegations of sexual assault. (ECF

6    No. 67-1.) As Stated by the Nevada Supreme Court, A.M.W.'s testified with particularity,

7    her testimony was corroborated, and the trial court permitted such evidence in light of its

8    probative value as to Petitioner's motivation, which outweighed the danger of unfair

9    prejudice. Although the trial court did not conduct a *Petrocelli* hearing for the evidence of

10   Petitioner's bigamy, the Nevada Supreme Court reasonably concluded that the evidence

11   was used only to impeach Guadalupe's credibility and did not suggest a propensity to

12   commit sexual assault against a child. Admission of evidence that Petitioner was married

13   to both Guadalupe and Kaura simultaneously did not render the trial fundamentally unfair.

14   Petitioner is not entitled to federal habeas relief for Ground 2.

15              **iv. The portion of Ground 2 pertaining to physical abuse is denied as
                    unexhausted.**

16

17         The Court initially found the portion of Ground 2 pertaining to physical abuse of

18   Anthony and B.C. was exhausted in the March 10, 2022, order resolving Respondents'

19   motion to dismiss. (ECF No. 91.) The Court initially found that this claim was exhausted

20   as part of the claim of ineffective assistance of counsel for introducing this evidence. (*Id.*

21   at 15.) Exhaustion of an ineffective assistance of counsel claim, however, does not

22   exhaust the underlying substantive claim. *See Rose v. Palmateer*, 395 F.3d 1108, 1111-

23   12 (9th Cir. 2005). The post-conviction appeal asserted only that counsel was ineffective

24   for presenting such evidence. It did not assert a substantive claim that the trial court erred

25   for admitting the evidence. (*See* ECF No. 75-1 at 20.) In addition, Petitioner's direct

26   appeal only addressed trial court error admitting prejudicial evidence pertaining to

27   A.M.W.'s allegations of sexual assault and Petitioner's bigamy. *See Dickens v. Ryan*, 740

28   F.3d 1302, 1318-19 (9th Cir. 2014) (stating that a claim is unexhausted if the additional

14

1  facts place the claim in a significantly different and stronger evidentiary posture than the

2  one presented to the state courts).

3      Therefore, this portion of Ground 2 pertaining to the trial court erroneously

4  admitting physical abuse evidence in violation of Petitioner's due process rights is

5  unexhausted and the Court denies federal habeas relief as to that portion of Ground 2.[2]

6      **C.  Ground 3**

7      In Ground 3, Petitioner alleges that the prosecutor committed misconduct by

8  improperly labeling Petitioner "guilty as charged" in a PowerPoint presentation during

9  opening argument. (ECF No. 49 at 21.) The slide titled "Verdict" listed the charges against

10  Petitioner and below the list of charges, it stated "guilty as charged." (ECF No. 39-6 at

11  52.) Petitioner asserts that the prosecutor's use of the PowerPoint presentation labeling

12  Petitioner "guilty as charged," violated his presumption of innocence and denied him a

13  fair trial. (ECF No. 116 at 35.) The prosecutor declared Petitioner guilty before any

14  evidence was presented and improperly influenced the jury. (*Id.* at 36.) Petitioner asserts

15  that the trial court did not instruct the jury to disregard the improper comment and that

16  Petitioner was prejudiced by the prosecutorial misconduct. (*Id.* at 38-39.)

17      **i.  State Court Determination**

18  The Nevada Supreme Court held:

19  [Petitioner] argues that the prosecutor committed misconduct during
   opening statements by discussing his prior bad acts and using the
20  statement "guilty as charged" as a bullet point on a PowerPoint slide. The
   prosecutor may not declare a defendant guilty in opening statement, orally
21  or otherwise, as such constitutes improper argument and expression of
   personal opinion, and the State's presentation of text declaring [Petitioner's]
22

23      [2]Respondents filed a motion to dismiss this portion of Ground 2 as unexhausted
   (ECF No. 64), which the Court denied, in part, in regard to Respondents' request for relief
24  for this portion of Ground 2. Petitioner had the opportunity to respond to the exhaustion
   issue at such time. The Court now modifies its order denying, in part, Respondents'
25  motion to dismiss regarding the exhaustion issue for the portion of Ground 2 alleging trial
   court error as to the admission of evidence of physical abuse of Anthony and B.C as
26  stated herein. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d
   882, 885 (9th Cir. 2001) (emphasis in original) ("As long as a district court has jurisdiction
27  over a case, then it possesses the inherent procedural power to reconsider, *rescind*, or
   modify an interlocutory order for cause seen by it to be sufficient.").
28

1
2
3
4
5
6
7

guilt was improper. *See Watters v. State*, 129 Nev., Adv. Op. 94, 313 P.3d 243, 248 (2013). [Petitioner] did not object, *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008) (reviewing for plain error), and has not shown, however, that this error affected his substantial rights when the State introduced the improper slide with the permissible explanatory context that the evidence would show [Petitioner's] guilt, diminishing any affront to the presumption of innocence, and the purely textual slide is distinguishable from the inflammatory practice of superimposing the word "guilty" over the defendant's image that was discouraged in *Watters*, 129 Nev., Adv. Op. 94, 313 P.3d at 248. With respect to the claim that the State improperly addressed prior-bad-acts evidence during opening statement, the instances discussed conformed to the evidence that the State offered and had admitted at trial, and thus the State did not act improperly. *See id.* at 247. Accordingly, we conclude that this claim fails.

8    (ECF No. 73-13 at 5-6.)

9              **ii. Conclusion**

10     The Nevada Supreme Court's decision is not contrary to nor an unreasonable

11   application of federal law as determined by the United States Supreme Court and is not

12   based on unreasonable determinations of fact in the state court record.

13     Prosecutorial misconduct warrants federal habeas relief if the prosecutor's actions

14   "so infected the trial with unfairness as to make the resulting conviction a denial of due

15   process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation

16   marks omitted). A defendant's constitutional right to due process of law is violated if

17   the prosecutor's misconduct renders  a  trial "fundamentally  unfair." *Id.* at 181-83; *see*

18   *also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process

19   analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the

20   culpability of the prosecutor"). Claims of prosecutorial misconduct are reviewed "on the

21   merits, examining the entire proceedings to determine whether the prosecutor's [actions]

22   so infected the trial with unfairness as to make the resulting conviction a denial of due

23   process." *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation and internal

24   quotation marks omitted); *see also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Turner v.*

25   *Calderon*, 281 F.3d 851, 868 (9th Cir. 2002). If there is constitutional error, a harmless

26   error analysis is applied; the error warrants relief if it "had substantial and injurious effect

27   or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-

28

1   38 (1993) (citation and internal quotation marks omitted); *Wood v. Ryan*, 693 F.3d 1104,

2   1113 (9th Cir. 2012).

3          The Nevada appellate court reasonably concluded that the prosecutor's conduct

4   did not infect the trial with unfairness to make the resulting conviction a denial of due

5   process. The Nevada appellate court examined the entire proceedings and concluded

6   that although the PowerPoint slide was improper, the prosecutor presented the slide

7   explaining that the evidence will show that Petitioner is guilty and the "guilty as charged"

8   label was purely textual. Moreover, the trial court instructed the jury as to the burden of

9   proof and Petitioner's presumption of innocence. (ECF No. 70-3 at 7, 18.) Accordingly,

10  Petitioner is not entitled to federal habeas relief for Ground 3.

11         **D. Ground 4**

12         In Ground 4, Petitioner alleges that the trial court improperly limited Petitioner's

13  ability to cross-examine witnesses and present a defense that B.C. and her brother had

14  a motive to fabricate testimony. He alleges that the trial court limited cross-examination

15  of B.C. because it did not allow questioning pertaining to prior bad acts that were relevant

16  to her motive to lie about abuse. (ECF No. 49 at 22-23.) He further alleges that the trial

17  court did not permit a CPS investigator's testimony to impeach Anthony's testimony that

18  Petitioner broke a beer bottle over his head. (*Id.* at 22-25.)

19                    **i.   Additional Background Information**

20                    **a.   Cross-Examination of B.C.**

21         Defense counsel intended to cross-examine B.C. as to instances where she'd

22  "stolen items in the past and possibly forged a document from her school." (ECF No. 49

23  at 22.) Upon objection from the State, defense counsel argued that the topic related to

24  B.C.'s "motive to fabricate, it goes to credibility, it goes to bias," in support of the defense

25  theory that Petitioner and Guadalupe disciplined B.C. because she was getting in trouble

26  and that she had a motive to retaliate. (*Id.* at 23.) The trial court precluded this line of

27  questioning on the basis that it improperly showed a propensity for untruthfulness. (*Id.*)

28

1   The trial court permitted the defense to include a slide in opening argument generally

2   stating that B.C. was getting in trouble. (*Id.*)

3                          **b.  CPS Investigator Testimony**

4          During cross-examination, defense questioned Anthony as follows:

5          **Q:**   So you were in trouble with your dad?

6          **A:**   Yes.

7          **Q:**   And then to get him back did you claim that he broke a beer bottle
8                   on your face?

9          **A:**   That was not to get him back, no.

10         **Q:**   No?

11         **A:**   That was not to get him back.

12         **Q:**   But you made a false allegation that he broke a beer bottle on your
                    face?

13                  . . .

14         **Q:**   So, in 2008 your dad actually hit you over the head with a beer
                    bottle?

15         **A:**   Yes.

16         **Q:**   And you had a serious injury?

17         **A:**   I had a bump on my head.

18         **Q:**   And everyone saw the bump on your head?

19         **Q:**   Yes.

20   (ECF No. 68-2 at 29.) Defense counsel intended to call a CPS investigator as an

21   impeachment witness to testify that she investigated the matter, interviewed Anthony, did

22   not see marks or bruising, interviewed the family, visited the home twice, and concluded

23   that the allegation that Petitioner broke a beer bottle over Anthony's head was

24   "unsubstantiated." (ECF No. 68-4 at 3.) The trial court did not permit admission of the

25   testimony on the basis that extrinsic evidence of impeachment on a collateral issue was

26   improper. (*Id.* at 4-5.)

27                          **ii.  State Court Determination**

28          The Nevada Supreme Court held:

                                            18

[Petitioner] argues that the district court violated his right to confrontation by limiting his impeachment of the victim with evidence of her prior bad acts and by not allowing testimony of a Child Protective Services (CPS) investigator to impeach [Anthony]. We conclude that the district court did not abuse its discretion in excluding evidence of the victim's prior bad acts when such acts improperly tended to show a propensity to untruthfulness and did not provide a motive to lie about the allegations of an eight-year period of repeated sexual assaults. *See Koerschner v. State*, 116 Nev. 1111, 1119, 13 P.3d 451, 457 (2000), *holding modified on other grounds by State v. Eighth Judicial Dist. Court (Romano)*, 120 Nev. 613, 97 P.3d 594 (2004). And we conclude that the district court did not err by excluding the CPS investigator's testimony regarding the beer bottle incident where that testimony was extrinsic evidence of a specific instance of conduct raised to contradict [Anthony's] statement about an incident unrelated to these charges and was thus properly excluded under the collateral-fact rule. *See Lobato v. State*, 120 Nev. 512, 518-19, 96 P.3d 765, 770 (2004). We note that [Petitioner] cross-examined [Anthony] regarding the beer-bottle allegation and thus was not impeded in developing this matter as to bias. *See id.* Accordingly, we conclude that this claim fails.

(ECF No. 73-13 at 6.)

### iii. Conclusion

The Nevada Supreme Court's decision is not contrary to nor an unreasonable application of federal law as determined by the United States Supreme Court and is not based on unreasonable determinations of fact in the state court record.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." U.S. Const. amend. VI. "[A] primary interest secured by [the Confrontation Clause] is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965); *see also Fensterer*, 474 U.S. at 22 ("[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose … infirmities through cross-examination, thereby calling to attention of the factfinder the reasons for giving scant weight to the witness' testimony."); *Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.").

While "the Confrontation Clause guarantees an opportunity for effective cross-examination," it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware*, 475 U.S. at 679 (internal

1    quotation marks omitted). The trial court retains wide latitude with respect to the

2    Confrontation Clause to impose reasonable limits on cross-examination based on

3    concerns that include prejudice, confusion of the issues and relevance. *See id.* at 679.

4        The Nevada Supreme Court reasonably ruled that the trial court did not limit

5    Petitioner's cross-examination of witnesses, such as to violate his constitutional right to

6    confront adverse witnesses or to present a complete defense. The trial court's rulings

7    were appropriate rulings on relevance and admissibility of evidence as it determined that

8    evidence of B.C.'s prior bad acts tended to show a propensity for dishonesty and did not

9    have a sufficient connection to demonstrate motive to lie about allegations of sexual

10   assault spanning across eight years. (*See* ECF No. 68-1 at 6.) Even if the trial court erred

11   in excluding the evidence at issue, any alleged error did not have a "substantial and

12   injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637-38.

13       In addition, because the trial court's exclusion of the CPS investigator's testimony

14   neither violated Petitioner's right to present a defense nor denied Petitioner an opportunity

15   for effective cross-examination, the state appellate court's rejection of this claim was not

16   objectively unreasonable. The Supreme Court "has never held that the Confrontation

17   Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment

18   purposes." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013). As noted by the state appellate

19   court, Petitioner cross-examined Anthony on the subject of the beer bottle incident. As

20   such, Petitioner has not shown that any alleged error had a substantial and injurious effect

21   or influence in determining the jury's verdict. Petitioner is not entitled to federal habeas

22   relief for Ground 4.

23       **E.  Ground 5**

24       In Ground 5, Petitioner alleges that the trial court erred when it permitted

25   inadmissible hearsay testimony from Detective Demas. (ECF No. 49 at 25.) Detective

26   Demas testified to two interviews he conducted with B.C. following her report of sexual

27   abuse including testimony of B.C.'s descriptions of two incidents of anal penetration.

28

1  (ECF No. 116 at 44-45.) Petitioner asserts that the admission of the hearsay improperly

2  bolstered B.C.'s testimony and rendered Petitioner's trial fundamentally unfair. (*Id.* at 46.)

3            **i. State Court Determination**

4  The Nevada Supreme Court held:

5  > [Petitioner] argues that the district court erred by allowing hearsay

6  > statements made by Brian Anthony and the victim through Detective
   > Demas's testimony. Hearsay evidence is an out-of-court statement offered

7  > to prove the truth of the matter asserted and is generally inadmissible. NRS
   > 51.035; NRS 51.065. Demas did not describe the statements that Brian

8  > Anthony made, but rather indicated that Brian Anthony reported witnessing
   > an incident, the victim reported that an incident occurred on the same day,

9  > and certain investigatory measures were taken as a result of this report,
   > such that this was permissible nonhearsay testimony as to the course of

10 > the investigation. *See Wallach v. State*, 106 Nev. 470, 473, 796 P.2d 224,
   > 227 (1990).

11 > In contrast, Demas's recitations of the victim's descriptions of two instances

12 > of sexual assault by anal penetration occurring at ages 14 and 16 were not
   > framed in terms of the responsive investigatory steps, went beyond

13 > explaining the course of the investigation, and were improper prior
   > consistent statements constituting impermissible hearsay. *See Patterson v.*

14 > *State*, 111 Nev. 1525, 1532, 907 P.2d 984, 989 (1995). We review such
   > error for harmlessness and conclude that this hearsay error was harmless

15 > where the victim's testimony was corroborated by independent reports from
   > each of her brothers of personally witnessing separate incidents of sexual

16 > assault, police officers finding pornographic materials allegedly used in
   > grooming where the victim said they would be and [Petitioner's] semen in

17 > one of the locations where she alleged that she was sexually assaulted,
   > and prior-bad-act evidence supporting her account of [Petitioner's] intent to

18 > sexually assault a young female family member and to use pornography in
   > connection with those assaults. *See id.* to 1533-34, 907 P.2d at 989-90

19 > (concluding erroneous admission of prior consistent statements was
   > harmless where independent evidence of guilt rose above the minimal).

20 > Accordingly, we conclude that this claim lacks merit.

21 (ECF No. 73-13 at 8-9.)

22           **ii. Conclusion**

23 The Nevada Supreme Court's decision is not contrary to nor an unreasonable

24 application of federal law as determined by the United States Supreme Court and is not

25 based on unreasonable determinations of fact in the state court record.

26 It is not the province of this Court to reexamine state-court determinations on

27 issues of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In conducting

28 habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States. *See id.* A state court's evidentiary ruling can be grounds for federal habeas relief if it is so fundamentally unfair as to violate due process. *See Dillard v. Roe*, 244 F.3d 758, 766 (9th Cir. 2001). Habeas relief is thus available only if an evidentiary ruling or rule was arbitrary, disproportionate to the end it was asserted to promote, or so prejudicial that it rendered the trial fundamentally unfair. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). Petitioner is entitled to habeas relief only if the error has a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 627.

The Nevada Supreme Court's finding was not objectively unreasonable. Although the state appellate court found Detective Demas's testimony reciting B.C.'s description of two instances of sexual assault was impermissible hearsay, the court found that the error was harmless. The trial court error did not have a substantial and injurious effect on the jury's verdict as the state appellate court found that the hearsay statements were corroborated by independent reports by each of B.C.'s brothers who personally witnessed separate incidents of sexual assault, results of the police investigation where pornographic materials were located where B.C. said they would be, Petitioner's semen in one of the locations where B.C. provided that she was sexually assaulted, and prior-bad-act evidence that supported B.C.'s account and Petitioner's intent to sexually assault young female family members and the use of pornography in connection to those assaults. The jury had evidence before it to adjudge Petitioner guilty, and the Court is not convinced that the trial court error of admitting hearsay statements through Detective Demas's testimony caused the jury to convict Petitioner where it might otherwise have voted to acquit. Accordingly, the Nevada Supreme Court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established U.S. Supreme Court law. Petitioner is not entitled to federal habeas relief for Ground 5.

**F.  Ground 6**

In Ground 6, Petitioner alleges that the cumulative trial errors set forth in Grounds 1 through 5 warrant federal habeas relief. (ECF No. 49 at 26.)

1

**i.   State Court Determination**

2      The Nevada Supreme Court held:

3          [Petitioner] argues that cumulative error compels relief. Although
           [Petitioner's] crimes were grave, the issue of his guilt was not close, and we
4          conclude that the prior-bad-act-hearing error, the opening statement error,
           and the hearsay error were insufficiently egregious to warrant relief. *See*
5          *Mulder v. State*, 116 Nev. 1, 17, 992 P.3d 845, 854-55 (2000).

6      (ECF No. 73-13 at 10.)

7                              **ii.   Conclusion**

8          The Nevada Supreme Court's decision is not contrary to nor an unreasonable

9      application of federal law as determined by the United States Supreme Court and is not

10     based on unreasonable determinations of fact in the state court record. Cumulative error

11     applies where, "although no single trial error examined in isolation is sufficiently

12     prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice

13     a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996); *see also*

14     *Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (explaining that the court must

15     assess whether the aggregated errors "'so infected the trial with unfairness as to make

16     the resulting conviction a denial of due process.'") (citing *Donnelly v. DeChristoforo*, 416

17     U.S. 637, 643 (1974)). Petitioner is not entitled to relief on his cumulative error assertion

18     because the cumulative effect of any errors does not rise to the level of warranting

19     reversal. Petitioner is denied relief for Ground 6.

20         **G.   Ground 7**

21         Petitioner's ineffective assistance of counsel claims in Ground 7 were raised in his

22     state post-conviction habeas corpus petition, and that petition was time-barred under

23     NRS § 34.726(1). "[F]ederal habeas review of procedurally defaulted claims is barred

24     unless the prisoner can demonstrate cause for the default and actual prejudice as a result

25     of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 724 (1991).

26     The Court denied Respondents' motion to dismiss, in part, finding that this action was

27     untimely, but that equitable tolling was warranted. (ECF No. 91.) The Court's

28     determination of equitable tolling, however, is inapplicable to the question of prejudice.

1   (*Id.*) The Court deferred consideration of whether Petitioner can demonstrate prejudice
2   to overcome procedural default of Ground 7 until the time of merits review. (ECF No. 91
3   at 19.) To show prejudice, "[t]he habeas petitioner must show 'not merely that the errors
4   at . . . trial created a possibility of prejudice, but that they worked to his actual and
5   substantial disadvantage, infecting his entire trial with error of constitutional dimensions."
6   *Murray v. Carrier*, 477 U.S. 478, 494 (1986).

7        Petitioner argues that he can demonstrate actual prejudice to overcome
8   procedural default of Ground 7 because his ineffective assistance of counsel claims in
9   Ground 7 satisfy the *Strickland* test. (ECF No.116 at 52.) He further asserts that because
10  he demonstrates cause and prejudice, the Court should review Ground 7 *de novo.* (*Id.*)

11                    **i.   Ground 7(a)**

12       In Ground 7(a), Petitioner alleges trial counsel rendered ineffective assistance for
13  failure to object to the State's improper PowerPoint slide presented during opening
14  argument that referred to Petitioner as "guilty as charged." (ECF No. 116 at 53.)
15  Petitioner, however, fails to demonstrate actual prejudice to overcome procedural default
16  of Ground 7(a) because he fails to demonstrate trial counsel rendered ineffective
17  assistance under *Strickland*.

18       In particular, Petitioner cannot satisfy the prejudice prong under *Strickland*
19  because he did not demonstrate "a reasonable probability that, but for counsel's
20  [deficiencies], the result of the proceeding would have been different." *Strickland*, 466
21  U.S. at 694. He fails to show a reasonable probability that, but for trial counsel's failure to
22  object to the PowerPoint slide, the outcome of the trial would have been different. At
23  opening, the prosecutor explained that the evidence will show that Petitioner is guilty in
24  the context of presenting the PowerPoint slide. Moreover, the PowerPoint slide did not
25  substantially affect the jury's verdict, in light of the substantial evidence supporting
26  Petitioner's convictions, including testimony of multiple corroborating witnesses.
27  Accordingly, Ground 7(a) is dismissed as procedurally defaulted.
28  ///

### ii. Ground 7(b)

In Ground 7(b), Petitioner alleges trial counsel rendered ineffective assistance for failure to move for a mistrial following A.M.W.'s outburst. (ECF No. 116 at 59.) Petitioner fails to demonstrate ineffective assistance of counsel under *Strickland* and fails to demonstrate actual prejudice to overcome procedural default of Ground 7(b).

Petitioner fails to establish that counsel's representation here fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 691. Following the outburst, the trial court immediately admonished the jury and trial counsel moved to clarify the record with declarations depicting A.M.W.'s outburst. The trial court reviewed video recording of the outburst and found that there was no indication of any reference specifically to [Petitioner] being a child molester or being guilty. Petitioner fails to establish that there was a reasonable basis for trial counsel to file a successful motion for mistrial. As such, there is no reasonable probability that, but for trial counsel's failure to file a motion for mistrial, that the result of the trial would have been different. Accordingly, Ground 7(b) is dismissed as procedurally defaulted.

### iii. Ground 7(c)

In Ground 7(c), Petitioner alleges that trial counsel rendered ineffective assistance for eliciting testimony that Petitioner physically assaulted Anthony, including one occasion wherein Petitioner struck Anthony with a beer bottle. (ECF No. 116 at 60-67.) Trial counsel elicited the prior bad act testimony to impeach Anthony with testimony from the CPS investigator to show Anthony previously lied to authorities about Petitioner committing child abuse. (*Id.* at 60-61.) Petitioner asserts that trial counsel was deficient because the CPS investigator's testimony was not permitted at trial as extrinsic evidence pertaining to a collateral matter. (*Id.* at 62-63.) Petitioner asserts he was prejudiced because the prior bad act evidence introduced by trial counsel "went beyond substantiating an instance of physical abuse: it communicated to the jury that [Petitioner] was a callous and cruel person capable of abusing his own, young, children. . ." (*Id.* at 66.)

The Court finds that Petitioner fails to demonstrate actual prejudice to overcome the procedural default of Ground 7(c). Petitioner fails to demonstrate a reasonable probability that the jury would have reached a verdict more favorable to Petitioner if trial counsel did not elicit testimony regarding Petitioner's physical abuse of Anthony. Even assuming that trial counsel's decision to elicit testimony regarding Petitioner's physical abuse of Anthony was error, such error did not prejudice Petitioner in light of all the properly admitted evidence against him. B.C. testified at trial regarding specific incidents of sexual assault and that the incidents occurred approximately three times a week. Anthony testified at trial that he witnessed two incidents of sexual assault by Petitioner against B.C. In addition, another brother, B.A.C. also testified at trial that he witnessed Petitioner lying in bed with B.C. and told Guadalupe what he saw. Detective Demas testified that police retrieved pornographic material in the locations that B.C. described to them. DNA evidence of Petitioner's semen was found on the couch where B.C. provided that Petitioner sexually assaulted her. Accordingly, Ground 7(c) is dismissed as procedurally defaulted.

### iv. Ground 7(d)

In Ground 7(d), Petitioner alleges trial counsel rendered ineffective assistance for failure to object to the introduction of testimony that Petitioner engaged in bigamy. (ECF No. 116 at 67-71.) The Court finds that Petitioner fails to demonstrate actual prejudice to overcome the procedural default of Ground 7(d). Petitioner cannot demonstrate either deficient performance or resulting prejudice under *Strickland*. Trial counsel's strategies, including the treatment of witnesses, are entitled to deference on review. *See Brown v. Uttecht*, 530 F.3d 1031, 1036 (9th Cir. 2008). As stated by the Nevada Supreme Court in regard to Petitioner's Ground 2, testimony regarding Petitioner's bigamy did not affect his substantial rights as it did not suggest a propensity to commit sexual assault against a child and substantial evidence supported his convictions. (ECF No. 73-13 at 4-5.) As such, Petitioner fails to demonstrate that, but for counsel's failure to object to the bigamy

testimony, there was a reasonable probability that the outcome of trial would have been different. Ground 7(d) is dismissed as procedurally defaulted.

### v.  Ground 7(e)

In Ground 7(e), Petitioner alleges trial counsel rendered ineffective assistance for failure to file a motion to suppress evidence the police found during unlawful searches of Petitioner's truck and house. (ECF No. 116 at 72.) Upon arrest, police interviewed Petitioner. He asserts that he invoked his right to an attorney before the recorded portion of the interview began and then again asked for an attorney toward the end of the recorded portion of the interview. (ECF No. 49 at 31.) Police ended the interview. (*Id.*) Trial counsel moved to suppress the interrogation, which the trial court denied. (*Id.*)

The police searched Petitioner's truck after he signed a consent form. (*Id.*) In his truck, police retrieved pornographic magazines. (*Id.*) The police also searched Petitioner's home after he signed a consent form. (*Id.* at 32.) The police retrieved a pornographic DVD and located a semen stain on the couch. (*Id.*) Petitioner asserts that trial counsel should have moved to suppress the evidence from the truck and home because Petitioner may have signed the consent forms after he invoked his right to an attorney. (*Id.*)

The Court finds that Petitioner fails to demonstrate actual prejudice to overcome the procedural default of Ground 7(e). Petitioner fails to demonstrate deficient performance and resulting prejudice under *Strickland*. Counsel's decision to forego filing a motion to suppress does not fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Trial counsel moved to suppress the interrogation based on Petitioner's invocation of his right to an attorney showing that trial counsel likely investigated the matter and determined that a motion to suppress the evidence was not meritorious. An attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 691; *see also Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) ("[E]ven if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant

1  relief if '[t]he record does not reveal' that counsel took an approach that no competent
2  lawyer would have chosen.").

3      Petitioner fails to demonstrate a reasonable probability that the jury would have
4  reached a verdict more favorable to Petitioner if trial counsel moved to suppress the
5  evidence. Petitioner cannot establish the prejudice prong of *Strickland* because he fails
6  to establish that a motion to suppress would have been successful. Accordingly, Ground
7  7(e) is dismissed as procedurally defaulted.

8  **V.   CERTIFICATE OF APPEALABILITY**

9      This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section
10  2254 Cases requires the Court to issue or deny a certificate of appealability ("COA").
11  Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability
12  for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851,
13  864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when
14  the petitioner "has made a substantial showing of the denial of a constitutional right." With
15  respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable
16  jurists would find the district court's assessment of the constitutional claims debatable or
17  wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S.
18  880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists
19  could debate: (1) whether the petition states a valid claim of the denial of a constitutional
20  right; and (2) whether this Court's procedural ruling was correct. *See id.*

21      Applying these standards, this Court finds that a certificate of appealability is
22  unwarranted.

23  **VI.   CONCLUSION**

24      It is therefore ordered that Petitioner's third amended petition for writ of *habeas*
25  *corpus* under 28 U.S.C. § 2254 (ECF No. 49) is denied.

26      It is further ordered that a certificate of appealability is denied.

27  ///

28  ///

1    It is further ordered that the Clerk of the Court is directed to substitute Tim Garrett

2  for Respondent James Dzurenda, enter judgment accordingly, and close this case.

3    DATED THIS 14th Day of November 2023.

4

5    _____

6    MIRANDA M. DU
     CHIEF UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28